UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NEDZAD O.,

                    Plaintiff,

          -v-                          6:20-CV-1131

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

OFFICE OF PETER W.              PETER W. ANTONOWICZ, ESQ.
     ANTONOWICZ
Attorneys for Plaintiff
148 West Dominick Street
Rome, NY 13440

SOCIAL SECURITY                 KEVIN M. PARRINGTON, ESQ.
     ADMINISTRATION             Special Ass't U.S. Attorney
Attorneys for Defendant
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

DAVID N. HURD
United States District Judge

<u>**MEMORANDUM–DECISION & ORDER**</u>

## I.  <u>INTRODUCTION</u>

On September 16, 2020, plaintiff Nedzad O.[1] ("plaintiff" or "claimant")
filed this action seeking review of the final decision of defendant
Commissioner of Social Security ("Commissioner" or "defendant") denying his
application for Disability Insurance Benefits ("DIB") under the Social
Security Act (the "Act").

The Commissioner has filed a certified copy of the Administrative Record
and both parties have briefed the matter in accordance with General Order
18, which provides that an appeal taken from the Commissioner's final
decision denying benefits will be treated as if the parties have filed
cross-motions for a judgment on the pleadings.  *See* FED. R. CIV. P. 12(c).

Plaintiff's appeal will be considered on the basis of these submissions
without oral argument.

## II.  <u>BACKGROUND</u>

On December 4, 2018, plaintiff applied for DIB alleging that his shoulder
pain, neck pain, back pain, right hand numbness, right heel issues,

---

[1]  In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's
Committee on Court Administration and Case Management and adopted as local practice in this
District, only claimant's first name and last initial will be mentioned in this opinion.

migraines, and depression rendered him disabled beginning on December 31, 2016.  R. at 161, 186.[2]

Plaintiff's claim was initially denied on February 28, 2019, R. at 84–89, and denied again after reconsideration on June 4, 2019, *id*. at 98–108.  At his request, a video hearing was held before Administrative Law Judge ("ALJ") David Romeo on February 26, 2020.  R. at 34–55.  The ALJ conducted the hearing from Syracuse, New York.  *Id*.  Plaintiff, represented by attorney Peter Antonowicz, appeared and testified by video through an interpreter from his attorney's office in Rome, New York.  *Id*.  The ALJ also heard testimony from Vocational Expert Robert Baker.  *Id*.

On March 5, 2020, the ALJ issued a written decision denying plaintiff's application for benefits.  R. at 10–19.  This decision became the final decision of the Commissioner on August 5, 2020, when the Appeals Council denied plaintiff's request for review.  *Id*. at 1–3.

## III.  **LEGAL STANDARD**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

---

[2] Citations to "R." refer to the Administrative Record.  Dkt. No. 13.

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

To qualify as disabled within the meaning of this definition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step sequential evaluation process to decide whether a claimant is disabled.  20 C.F.R. § 404.1520.[3]  At step one, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity."  § 404.1520(a)(4)(i).  If so, the claimant is not disabled regardless of his medical condition or other factors.  § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments; *i.e.*, a medically determinable

---

[3]  Section 404.1520 sets forth the five-step evaluation used for DIB claims.  A parallel set of regulations govern SSI applications.  *See* 20 C.F.R. § 416.920(a)(4).

condition that "significantly limits" his physical or mental ability to do basic work activities. § 404.1520(c).

If the claimant suffers from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether the impairment(s) meet or equal an impairment specifically listed in Appendix 1 of the Regulations (the "Listings"). § 404.1520(d). If the claimant's severe impairment(s) meet or equal one or more of the Listings, then the claimant is presumed to be disabled regardless of any other factors. § 404.1520(a)(4)(iii).

If the claimant is not presumed disabled under one or more of the Listings, then step four requires the ALJ to assess whether—despite the claimant's severe impairment(s)—he has the residual functional capacity ("RFC") to perform his "past relevant work." § 404.1520(e)–(f). If so, the claimant is not disabled. § 404.1520(a)(4)(iv).

Finally, if the claimant cannot perform his past relevant work, the Commissioner must determine if the claimant's RFC, in combination with his age, education, and work experience, permits the claimant to do any other work in the national economy. § 404.1520(a)(4)(v), (f)–(g).

The burden of proof for the first four steps is on the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). However, if the claimant shows he cannot perform his past relevant work at step four, the burden shifts to the Commissioner for step five. *Id.*

The Act further provides for judicial review of "any final decision . . . made after a hearing" by the Social Security Administration ("SSA" or the "Agency").  42 U.S.C. § 405(g).  However, the scope of this review is limited to determining whether (1) the Commissioner applied the correct legal standard to his analysis and, if so, (2) whether the final decision is supported by "substantial evidence."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (cleaned up).

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up).  "If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists."  *Morales v. Berryhill*, 484 F. Supp. 3d 130, 140 (S.D.N.Y. 2020) (citation omitted).

However, this "deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).  Thus, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  This is so regardless of whether or not the decision is otherwise supported by "substantial evidence."  *See id.*

## IV. **DISCUSSION**

The ALJ applied the five-step analysis to find that: (1) plaintiff had not

engaged in substantial gainful activity since December 31, 2016, the alleged

onset date; (2) plaintiff's chronic obstructive pulmonary disease, tobacco

dependence, and degenerative disc disease of the lumbar and cervical spines

were "severe" impairments within the meaning of the Regulations; and that

(3) these severe impairments, whether considered individually or in

combination, did not meet or equal any of the Listings.  R. at 12–13.

At step four, the ALJ determined that plaintiff retained the RFC to

perform light work with the following set of limitations:

> the claimant is able to occasionally balance, stoop,
> kneel, crouch, crawl, and climb ramps and stairs; the
> claimant is never able to climb ropes, ladders, and
> scaffolds; the claimant can be occasionally exposed to
> weather, extreme heat, extreme cold, wetness,
> humidity, vibration, and atmospheric conditions; the
> claimant has the need to change positions from
> standing to sitting, which can be accommodated by the
> occasional sitting involved in light work; the claimant
> cannot have concentrated exposure to known
> respiratory irritants.

R. at 14.

Next, the ALJ determined that plaintiff had past relevant work as a retail

sales clerk.  R. at 19.  Because plaintiff retained the RFC to perform this job

based on the Vocational Expert's testimony, the ALJ concluded that plaintiff

was not disabled between December 31, 2016, the alleged onset date, through

March 5, 2020, the date of his written decision.  *Id.*  Accordingly, the ALJ denied plaintiff's application for benefits.  *Id.*

## A.  <u>Plaintiff's Appeal</u>

Plaintiff contends the ALJ (1) incorrectly assessed his mental impairments as non-severe at step two and (2) improperly assessed the medical opinion evidence at step four.  Pl.'s Mem., Dkt. No. 16 at 1.

## 1.  <u>Severity of Mental Impairments</u>

"Step two's 'severity' requirement is *de minimis* and is meant only to screen out the weakest of claims."  *Smith v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 276 (W.D.N.Y. 2018).  "However, despite this lenient standard, the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe."  *Id.* (cleaned up).  "Rather, to be considered severe, an impairment or combination of impairments must cause more than minimal limitations in a claimant's ability to perform work-related functions."  *Id.*

"Where, as here, mental impairments are at issue, the Commissioner directs administrative adjudicators to employ a 'psychiatric review technique' (sometimes referred to as a 'special technique')."  *Amanda R. v. Comm'r of Soc. Sec.*, –F. Supp. 3d–, 2021 WL 3629161, at *3 (N.D.N.Y. Aug. 17, 2021) (cleaned up).

This "special technique" is used by ALJs to determine, as a threshold matter, whether a claimant has one or more medically determinable mental impairments. *Amanda R.*, 2021 WL 3629161, at *3. If the claimant suffers from one or more impairment, "[t]his technique also enables administrative law judges to determine whether [those] medically determinable mental impairments are severe (a Step 2 issue) and whether they meet or are equivalent in severity to any presumptively disabling mental disorder (a Step 3 issue)." *Id.*

At the first step of this special technique, the ALJ must evaluate "symptoms, signs, and laboratory findings" to determine whether the claimant has one or more medically determinable mental impairments. 20 C.F.R. § 404.1520a(b)(1). If so, at step two of the special technique the ALJ must rate the degree of functional limitation that results from the medically determinable mental impairment(s). § 404.1520a(b)(2).

This involves the consideration of the degree of limitation present in "four broad functional areas": (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. § 404.1520a(c)(3).

These four functional areas are measured on a five-point scale that ranges between "none," "mild," "moderate," "marked," and "extreme," with the last point on the scale representing "a degree of limitation that is incompatible

with the ability to do any gainful activity."  § 404.1520a(c)(4).  If, however, the degree of limitation in each of these areas is "none" or "mild," the impairment will be considered non-severe absent evidence that "otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  § 404.1520a(d)(1).

A review of the ALJ's narrative discussion reflects that he applied this "special technique" to assess plaintiff's mental impairment(s).  R. at 13.  In brief, the ALJ found that plaintiff suffered from medically determinable "bipolar disorder," analyzed the four broad functional areas, and determined that plaintiff had no more than a "mild" limitation in adapting or managing himself.  *Id.*  Accordingly, the ALJ concluded that plaintiff's bipolar disorder was "nonsevere."  *Id.*

Plaintiff contends the ALJ erred in his analysis because he failed to "cite any medical evidence that supports" this finding.  Pl.'s Mem. at 16.  In plaintiff's view, the ALJ should have discussed in this section of the decision, and given significant or even controlling weight to, the mental limitations assessed by NPP[4] Patricia Roach, one of plaintiff's treating psychiatric sources.  *Id.* at 16–17.  According to plaintiff, the ALJ was also required to obtain a medical expert "to resolve the conflict between the treating source

---

[4]  NPPs are "non-physician practitioners" and generally fall into two camps: physician assistants and advanced practice nurses like a clinical nurse specialist or a nurse practitioner.  Plaintiff characterizes NPP Roach as a nurse practitioner.  Pl.'s Mem. at 17.

findings and those of defendant's state agency and consultative sources." *Id.* at 18.

Upon review, these arguments will be rejected.  As an initial matter, "[i]t is well-established that the ALJ has both the ability and the responsibility to resolve conflicts in the evidence." *Amanda R.*, 2021 WL 3629161, at *5.  And contrary to plaintiff's assertion, the ALJ's written decision makes clear that he engaged at length with the psychiatric opinion evidence, including NPP Roach's findings.  R. at 17–18.

Although NPP Roach assessed "moderate" limitations in several areas and opined that plaintiff would be "off-task" for significant periods of the workday, R. at 956–959, the ALJ ultimately concluded that her opinion was "not persuasive" and "not consistent with the overall medical evidence and the treatment reports," R. at 17–18.

In particular, the ALJ found that NPP Roach's opinions on these issues were in conflict with plaintiff's reported activities of daily living as well as the medical opinion of Sara Long, Ph.D, a consultative psychiatric examiner.  R. at 18.  As relevant here, Dr. Long opined that plaintiff had only "mild to, at times, moderate limitations regarding regulating emotions." *Id.* at 630.  The ALJ also discussed the medical opinions of T. Bruni, Ph.D, and E. Gagan, Ph.D, two non-examining Stage agency psychiatric consultants who assessed at best a "mild limitation in adapting and managing oneself." R. at 17.

Plaintiff has failed to point out any controlling legal principle that obligated the ALJ to retain an impartial medical expert to help him resolve the evidentiary conflict between these various sources. *Amanda R.*, 2021 WL 3269161, at *5 (rejecting similar argument); *cf. Beasock v. Colvin*, 2014 WL 421324 (N.D.N.Y. Feb. 4, 2014) (Sharpe, J., adopting Report & Recommendation of Hines, M.J.) (explaining that under a prior iteration of the Regulations an ALJ "has discretion as to when it is necessary to call a medical expert").

And for the reasons explained at length in the Commissioner's brief, the ALJ was entitled to resolve this conflict in the psychiatric evidence by relying on the consultants' opinions, which were consistent with each other and with the rest of the medical record. *See, e.g.*, *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 204 (N.D.N.Y. 2012) (Suddaby, J., adopting Report & Recommendation of Bianchini, M.J.) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."). Accordingly, these arguments will be rejected.

## 2. **Medical Opinion Evidence**

"Where, as here, the ALJ finds at step two that a claimant has one or more 'severe' impairments but determines at step three that the claimant is not

presumptively disabled, the ALJ must go on to make an RFC finding, which is an assessment of 'what an individual can still do despite his or her limitations.'" *Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 192 (N.D.N.Y. 2019) (quoting *Cox v. Astrue*, 993 F. Supp. 2d 169, 183 (N.D.N.Y. 2012) (McAvoy, J.)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and subjective symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 183 (N.D.N.Y. 2019) (citation omitted).

"The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Rivera v. Comm'r of Soc. Sec.*, 368 F. supp. 3d 626, 640 (S.D.N.Y. 2019).  "In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." *Tammy Lynn B.*, 382 F. Supp. 3d at 192–93 (citation omitted).

Historically, the Regulations divided evidence from medical sources into three categories: (1) treating; (2) acceptable; and (3) other.[5]  Under this category-based approach, an opinion from a "treating source" enjoyed special treatment: it received *controlling* weight as long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

However, on January 18, 2017, the SSA revised the rules regarding the way it evaluates evidence from medical sources.[6]  Under the new regime, "no particular deference or special weight is given to the opinion of a treating physician." *Quiles v. Saul*, 2021 WL 848197, at *9 (S.D.N.Y. Mar. 5, 2021). Instead, an ALJ is now obligated to evaluate the persuasiveness of "all of the medical opinions" based on the same general criteria: (1) supportability; (2) consistency with other evidence; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) other relevant case-specific factors "that tend to support or contradict a medical opinion or

---

[5]  A treating source included a claimant's "own physician, psychologist, or other acceptable medical source" who has provided "medical treatment or evaluation and who has, or has had, an ongoing treatment relationship" with the claimant.  *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

[6]  The new Regulations apply to claims filed on or after March 27, 2017.  Because plaintiff's claim was filed on December 4, 2018, the new Regulations govern this appeal.

prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

The most important of these factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Although the Regulations obligate the ALJ to explain how he or she considered these two specific factors, "an explanation for the remaining factors is not required unless the ALJ is deciding among multiple medical opinions of equal support and consistency on the same issue that differ slightly." *Dany Z. v. Saul*, –F. Supp. 3d–, 2021 WL 1232641, at *9 (D. Vt. Mar. 31, 2021); *see also* §§ 404.1520c(b)(2), 416920c(b)(2).

As an initial matter, plaintiff argues that these new Regulations did not validly eliminate the "treating physician" rule because it "was enunciated by the Second Circuit before [being] incorporated in the regulations." Pl.'s Mem. at 20. In plaintiff's view, the treating physician rule remains applicable despite the conceptual change from an assessment of weight to that of persuasiveness." *Id*. at 21.

Upon review, this threshold argument about the validity of the revised Regulations must be rejected. "Multiple courts have considered similar arguments as the new regulations become more widely applied, and all have upheld the validity of the Commissioner's elimination of the treating physician rule and implementation of the new regulations." *Amanda R.*,

2021 WL 3629161, at *6 (quoting *Tasha W. v. Comm'r of Soc. Sec.*, 2021 WL

2952867, at *6 (N.D.N.Y. July 14, 2021) (Dancks, M.J.) (collecting cases)).

Importantly, though, the implementation of these new Regulations do not

actually change much in terms of the legal analysis itself.  As Judge Baxter

has explained:

> Consistency and supportability were as important
> under the previous regulations as they are in the new
> regulations because "consistency" with evidence in the
> record was always considered when determining
> whether "controlling" weight was going to be given to
> a treating physician's opinion, before any of the other
> factors were considered.  The new regulations restate
> the factors which have always been used in
> considering any medical opinion.   A treating
> physician's opinion may still be more persuasive
> because he or she will have examined the plaintiff
> more frequently and will presumably have a more
> substantial relationship with the patient.   Thus,
> although there is no "special" deference given, the
> treating relationship is one of the factors to be
> considered in the analysis under the new regulations.

*Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283, at *10 (N.D.N.Y. Mar. 30,

2021) (Baxter, M.J.).

In other words, although "ALJs are no longer directed to afford controlling

weight to treating source opinions—no matter how well supported and

consistent with the record they may be—the regulations still recognize the

'foundational nature' of the observations of treating sources, and 'consistency

with those observations is a factor in determining the value of any [treating

source's] opinion." *Shawn H. v. Comm'r of Soc. Sec.*, 2020 WL 3969879, at \*6 (D. Vt. July 14, 2020) (quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)).

The substance of plaintiff's challenge to the medical opinion evidence boils down to his assertion that the ALJ should have adopted the more restrictive limitations assessed by his treating providers rather than the less restrictive ones assessed by some of the State agency medical consultants.  Pl.'s Mem. at 21–24.  But as the Commissioner explains in her brief, ALJ acted within the bounds of his discretion in discounting the more restrictive functional opinions offered by Nathaniel Gould, M.D. and Michael Breslow, M.D.  Def.'s Mem., Dkt. No. 19 at 18–20 (detailing inconsistencies and other shortcomings in these providers' opinions).

In short, plaintiff has failed to identify a legal error in the ALJ's analysis.  And "[t]he substantial evidence standard means that once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original).

In other words, the claimant must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Z.J.F. ex rel. Conkling v. Comm'r of Soc. Sec.*, 2018 WL 1115516, at \*6 (N.D.N.Y. Feb. 27, 2018) (Carter, M.J.).  However, as explained *supra* and

in the Commissioner's brief, the ALJ's narrative discussion establishes that he reached a series of reasonable, supportable conclusions about plaintiff's limitations based on substantial evidence in the record.  Accordingly, this argument must also be rejected.

## IV.  <u>CONCLUSION</u>

The ALJ applied the correct legal standards and supported his written decision with substantial evidence in the record.

Therefore, it is

ORDERED that

1.  The Commissioner's motion for a judgment on the pleadings is GRANTED;

2.  Plaintiff's motion for a judgment on the pleadings is DENIED;

3.  The Commissioner's final decision is AFFIRMED; and

4.  Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  December 21, 2021
        Utica, New York.